UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DESIRAE P.[1],

                Plaintiff,

v.                                       6:21-CV-6219 (JLS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

## DECISION AND ORDER

Plaintiff Desirae P. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the decision made by the Commissioner of the Social Security Administration finding that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 8. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 9, 10. For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross motion.

## PROCEDURAL HISTORY

On February 7, 2018, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

Title XVI, of the Social Security Act.[2]  Tr. 88.[3]  Plaintiff's applications were initially

denied, after which she timely requested a hearing before an Administrative Law

Judge ("the ALJ").  On March 11, 2020, Plaintiff appeared before ALJ Matthew

Kuperstein.  Tr. 34-67.  On May 4, 2020, ALJ Kuperstein issued a written decision

finding Plaintiff not disabled under the Social Security Act.  Tr. 12-33.  On January

27, 2021, the Appeals Council ("AC") denied Plaintiff's request for review, rendering

the ALJ's decision the final decision of the Commissioner.  Tr. 1-6.  Thereafter,

Plaintiff timely sought judicial review in this Court.

## LEGAL STANDARDS

### I.  District Court Review

Judicial review of disability claims under the Act is limited to whether the

Commissioner's decision is supported by substantial evidence and whether the

correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729

F.3d 172, 177 (2d Cir. 2013).  The Commissioner's factual findings are conclusive

when supported by substantial evidence.  *See Biestek v. Berryhill*, 139 S. Ct. 1148,

---

[2] Plaintiff applied for both SSD and SSI.  To receive SSD, a claimant must show
that he/she became disabled while meeting the Act's insured status requirements.
*See* 42 U.S.C. § 423(d)(1)(A); *Schillo v. Kijakazi*, 31 F.4th 64, 69-70 (2d Cir. 2022).
SSI, on the other hand, "provides benefits to each aged, blind, or disabled individual
who does not have an eligible spouse and whose income and resources fall below a
certain level."  *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C.
§ 1382(a)) (internal quotation marks omitted).  The Social Security Administration
uses the same five-step evaluation process to determine adult eligibility for both
programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning SSD), 416.920(a)(4)
(concerning SSI).

[3] The filing at Dkt. 7 is the transcript of the proceedings before the Social Security
Administration.  All references to Dkt. 7 are hereby denoted "Tr. __."

1152 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

While the Court does not determine *de novo* whether the claimant is disabled, the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable doubt as to whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (holding that the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II.   Disability Determination

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. *Id.* §§ 404.1572, 416.972. If the

3

ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* §§ 404.1520(b), 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(d), 416.920(d). If such criteria are met, then the claimant is declared disabled. *Id.* §§ 404.1520(d), 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* §§ 404.1545, 416.945. In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* §§ 404.1560(b)(3), 416.960(b)(3). If the ALJ finds that the claimant is unable to

perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* §§ 404.1520(g)(1), 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her/his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1560(c), 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given her/his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ made the following five findings of fact and conclusions of law. Tr. 18-29. First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2023, and that she had not engaged in substantial gainful activity since February 3, 2017. Tr. 18. Second, the ALJ found that Plaintiff had the severe impairments of spine disorder and asthma. *Id.* Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. Tr. 22. Fourth, the ALJ found that Plaintiff had the RFC to perform light work, except Plaintiff was:

> limited to lifting and/or carrying 20 pounds occasionally and ten pounds frequently; to standing and/or walking with normal breaks for a total of

six hours in an eight-hour workday; to sitting with normal breaks for a total of six hours in an eight-hour workday; to only occasional pushing and/or pulling including the operation of hand controls with the right upper extremity; to no more than occasional exposure to extreme heat, extreme cold, humidity, fumes, odors, dusts, gases, or poor ventilation.

Tr. 23.[4]  Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy she could perform.  Tr. 27.

## II.   Plaintiff's Arguments

Plaintiff makes three arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ failed to find her psychiatric impairments severe at step two and the RFC did properly reflect psychiatric limitations.  Dkt. No. 8 at 12-16.  Second, Plaintiff argues that even if her psychiatric impairments were non-severe, the ALJ failed to include and address psychiatric limitations in the RFC and subsequent steps of his evaluation.  *Id.* at 17-23.  And third, Plaintiff argues that the ALJ failed to resolve a conflict between

---

[4] Light work:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

the vocational expert testimony and the Dictionary of Occupational Titles ("DOT"), and failed to address limitations from her non-severe impairments. *Id.* at 23-25.

## III.   Analysis

### A. Non-severe Mental Impairments at Step Two

Plaintiff argues that the ALJ failed to find her psychiatric impairments severe at step two. Dkt. No. 8 at 12-16.  Plaintiff makes the related argument, "whether severe or non-severe, the ALJ still erred in failing to include and address psychiatric limitations in the RFC and subsequent steps of his evaluation." *Id.* at 17-23.  Plaintiff's argument fails.  The ALJ's step two determination was proper and supported by substantial evidence.

In general, an impairment or combination of impairments is not severe if it does not significantly limit a plaintiff's ability to do basic work activities.  20 C.F.R. §§ 404.1522(a), 416.922(a).  Examples of basic mental work activities include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  *Id.* §§ 404.1522(b)(3)-(6), 416.922(b)(3)-(6).

An ALJ's decision that an impairment is non-severe at step two must be "supported by 'substantial evidence' in the record as a whole." *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002).  A finding that a plaintiff's impairment "is non-severe is not supported by substantial evidence [when] the evidence on which it is based is inconsistent with evidence that [the plaintiff's impairment] significantly

impaired her ability to do basic work activities." *Parker-Grose v. Astrue*, 462 F. App'x 16, 17-18 (2d Cir. 2012). "Notably, it is the claimant's burden to show at step two that she has a severe impairment. A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe." *Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-991, 2018 WL 3751292, at *2 (W.D.N.Y. Aug. 7, 2018) (internal citations and quotations omitted), *aff'd sub nom. Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019).

Here, consistent with case law and the regulations, the ALJ concluded Plaintiff's mental impairments were non-severe because she had mild or no limitations in the four broad areas of mental functioning. Tr. 21-22. The four areas, or more commonly known as "paragraph B criteria," represent the areas of mental functioning a person uses in a work setting. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b). The four areas are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* An ALJ will determine the degree to which a plaintiff's medically determinable mental impairment affects the four areas of mental functioning and plaintiff's ability to function independently, appropriately, effectively, and on a sustained basis. *Id.*

In his step two determination, the ALJ concluded that Plaintiff had no, or mild, limitations in the four areas of mental functioning. Tr. 21-22. The effects of a plaintiff's mental disorder are evaluated on a five-point rating scale. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(a-e). No limitation, or none, means a plaintiff is

able to function in the area independently, appropriately, effectively and on a sustained basis. *Id.* Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(a). A mild limitation means a plaintiff's ability to function in the area independently, appropriately, effectively, and on a sustained basis is "slightly limited." *Id.* 12.00(F)(2)(b).

A mental impairment rated as "none" or "mild" will generally not qualify as "severe," whereas those rated as "moderate," "marked," or "extreme" will qualify as "severe" under step two. *Schafenberg v. Saul*, 858 F. App'x 455, 456 (2d Cir. 2021); *see Cherry v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 658, 661 (2d Cir. 2020) (ALJ properly determined plaintiff's mental impairments were not severe based on substantial evidence in the record showing his mental impairments caused only mild limitations); *see* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) (the ALJ "will generally conclude that [plaintiff's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities.").

Substantial evidence supports the ALJ's step-two determination that Plaintiff's mental impairments caused no more than mild limitations in the four areas of mental functioning and were, therefore, non-severe. The ALJ considered the opinion of consultative examiner Stephen Farmer, Psy.D. Tr. 20. Dr. Farmer performed a psychiatric evaluation and provided a medical source statement. Tr. 325-329. Dr. Farmer concluded that Plaintiff had no evidence of limitations in understanding, remembering, or applying simple directions and instructions. Tr. 328. He opined that Plaintiff had mild limitations in: understanding, remembering,

9

or applying complex directions and instructions; interacting adequately with supervisors, coworkers, and the public; sustaining concentration and performing a task at a consistent pace; regulating emotions, controlling behavior, and maintaining wellbeing. *Id.* The ALJ found Dr. Farmer's opinion "somewhat persuasive," reasoning that it was based on a one-time examination and that the doctor did not have a chance to review the record. Tr. 20. However, the ALJ found that the doctor's limitations were internally supported and consistent with "other medical evidence of record." *Id.*; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ determined that the prior administrative finding provided by the State agency psychologist was "persuasive." Tr. 26. The State agency psychologist determined that Plaintiff's mental impairments were non-severe. Tr. 81. The psychologist noted that, at the time of his review, Plaintiff was prescribed medication by her primary care provider, she was employed part time, and objective mental status examinations were within normal limits except for poor insight. Tr. 82. Both opinions support the ALJ's step-two determination. *See Grega v. Saul*, 816 F. App'x 580, 582–583 (2d Cir. 2020) ("A consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record.").

In addition to the consultative examiners' opinions and findings, the ALJ relied on mental health treatment notations from 2017 through 2020. Tr. 19. The ALJ considered treatment records containing both positive findings on examination,

such as anxious mood, labile affect, and impulsivity, as well as treatment notations indicating normal findings on mental status examinations.  Tr. 20.

Lastly, the ALJ considered a statement provided by Danielle Montrond, LMSW, and found her opined limitations "minimally persuasive." Tr. 20.[5]  She opined that Plaintiff would be absent from work approximately three days per month.  Tr. 806.  She opined that Plaintiff would be "off task" more than 30 percent of the workday.  Id.  She indicated that Plaintiff would have limitations in all areas of mental functioning.  Tr. 805.  In concluding that her opinion was "minimally persuasive," the ALJ reasoned that Ms. Montrond was not an acceptable medical source, Plaintiff's mental status examinations had been "generally normal," and the limitations provided were not internally supported nor consistent with other medical evidence.  Id.  Therefore, the evidence in the record, as outlined by the ALJ, supported his step two determination that Plaintiff's mental impairments were non-severe.

Plaintiff asserts that evidence in the record demonstrates her psychiatric impairments impaired her ability to interact with others, concentrate, complete tasks, make judgments, manage complexity and speed of tasks, interact with others, and cope with perceived stress.  Dkt. No. 8 at 14.  In support of her argument, Plaintiff cites to her hearing testimony and self-reports to providers.  Id.  The ALJ considered the evidence that Plaintiff asserts supports a finding of severe mental impairments; however, the ALJ came to a different conclusion and, because his

_____

[5] Neither party disputes the ALJ's assessment of Ms. Montrond's statement.

conclusion was supported by substantial evidence, it must be upheld. *See Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review); *see Wojciechowski v. Colvin,* 967 F. Supp. 2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position).

Indeed, in his step-four analysis, the ALJ considered Plaintiff's testimony regarding limitations due to her mental impairments, including testimony that she "does not like people," "does not like therapy," had high anxiety, does not like being yelled at, and has difficulty completing tasks. Tr. 24. The ALJ ultimately found that Plaintiff's subjective complaints were not supported by the record. *See also Taylor v. Barnhart,* 83 F. App'x 347, 350 (2d Cir. 2003) (the ALJ is empowered to exercise discretion to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant) (internal citations omitted).

Under the substantial evidence standard of review, it is not enough for Plaintiff to disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S. Ct. at 1154 (citing *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126

(1938)).  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);).  Therefore, although evidence in the record could support Plaintiff's assertion, substantial evidence supports the ALJ's determination and, therefore, the ALJ's determination is upheld.

Plaintiff makes the related argument that, even if her mental impairments were properly found to be non-severe, the ALJ nonetheless erred in failing to include them in the RFC.  Dkt. No. 8 at 17.  Plaintiff's argument fails.  Although the ALJ determined Plaintiff's psychiatric impairments were non-severe, the ALJ found she had other severe impairments, proceeded with the sequential process, and discussed all impairments in his subsequent analysis.  Substantial evidence supports the ALJ's determination that Plaintiff's non-severe psychiatric impairments did not warrant additional work related limitations.

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  To be sure, "[a] RFC determination must account for limitations imposed by both severe and nonsevere impairments."  *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012).  But where, as here, substantial evidence supports the ALJ's determination that Plaintiff's mental impairments caused no more than mild limitations in four broad areas and are, therefore, non-severe, additional mental restrictions in the RFC are not warranted.  Indeed, absent other severe impairments, a finding of only mild limitations at step two would cease the analysis and benefits would be denied.  *See*

*Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (the degree of limitation in each of the first three areas is rated "mild" or better, then the ALJ will generally conclude that the claimant's mental impairment is not severe and will deny benefits); *see Jane M. A. v. Comm'r of Soc. Sec.*, No. 19-CV-808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021) (same). Therefore, because the ALJ properly determined Plaintiff's mental impairments did not cause more than mild limitations in the four broad areas of functioning, no additional psychiatric limitations were warranted in the RFC.

The ALJ considered Plaintiff's mental impairments at step two, as well as step four. The ALJ properly summarized the evidence in the record, including Plaintiff's testimony, and concluded that her non-severe mental impairments did not provide additional work-related functional limitations. Although Plaintiff cites evidence in the record of subjective complaints regarding her psychiatric limitations, she fails to prove she had additional work related mental functional limitations. It is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ, and she has failed to do so. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

Lastly, any failure to include additional mental limitations in the RFC would be harmless error. A limitation to simple, routine, repetitive work would not have eliminated the occupations provided by the vocational expert ("VE"); therefore, any error in failing to include additional mental limitations in the RFC would be harmless. *See Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir. 2010) (error was

harmless where there is "no reasonable likelihood" that consideration of evidence "would have changed the ALJ's determination that Petitioner was not disabled").

Indeed, at the hearing, the ALJ presented a hypothetical to the VE based on the RFC and Plaintiff's vocational factors. Tr. 60. After presenting the hypothetical, the ALJ asked the VE:

> if the individual was further limited to work that involves simple routine and repetitive tasks, and does not have any interaction with [—] the general public, and has only occasional interaction with a coworker, or supervisors, and that that does involve teamwork, or collaboration with others. Let's see—in a stable predictable work environment. Could the individual still do each of the three occupations that you described?

Tr. 60. The VE testified that, with those additional mental limitations, Plaintiff could perform the occupations of laundry worker, production inspector, and electrical assembler. Tr. 61. Ultimately, the ALJ identified those occupations as representative occupations at step five of the sequential evaluation. Tr. 28.

As noted by the ALJ:

> even when hypothetical questions were posed to the vocational expert regarding further limitations to work involving only simple routine and repetitive tasks; to not having any interaction with the general public; to having only occasional interaction with coworkers and supervisors and that does not require teamwork or collaboration with others in a stable and predictable work environment; to only frequent handling, fingering, or feeling; that does not involve unprotected heights, dangerous moving machinery, or the operation of motor vehicles, the vocational expert testimony reflected that the other work he described as a production inspector and electrical assembler could still be performed. The undersigned stops short of adding these limitations to the determined residual functional capacity (RFC) as the record fails to support that the claimant has had this further level of ongoing limitation during the period at issue.

Tr. 28.

Therefore, the ALJ's determination that Plaintiff's mental impairments were non-severe and did not significantly limit her ability to do basic work activities was proper and supported by substantial evidence in the record. Further, the ALJ discussed all of Plaintiff's impairments, severe and non-severe, in his step four and five analysis, and additional mental functional limitations would not have eliminated the occupations relied on at step five.

**B. Shoulder Impairment**

Plaintiff argues that the ALJ failed to properly assess her shoulder impairment throughout his decision. Dkt. No. 8 at 17-25. Plaintiff asserts that the ALJ "found Plaintiff's shoulder [impairment] was non-severe," but failed to "provide clear explanation what limitations were imposed by the consideration of Plaintiff's non-severe shoulder impairment in combination with her assessed severe back impairment." *Id.* at 23. Plaintiff further asserts that the ALJ failed to "address or explain" the consultative examiner's opinion that she had a "moderate restriction" for overhead activity with the right upper extremity. *Id.* Plaintiff's arguments fail.

It is well-established that the ALJ has both the ability and the responsibility to resolve conflicts in the evidence and to weigh all of the available evidence "to make an RFC finding that is consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Contrary to Plaintiff's assertion, the ALJ did address the consultative examiner's opinion regarding reaching. Dkt. No. 8 at 23, 24. In his discussion of

the medical opinion evidence in the record, the ALJ summarized the opinion of consultative examiner, Despina Isthos, D.O.  Dr. Isthos examined Plaintiff, reviewed medical imagining, and provided a medical source statement.  Tr. 317-323. Dr. Isthos opined, in relevant part, that Plaintiff had a "moderate restriction" for "overhead activity with the right upper extremity."  Tr. 321.  The ALJ considered Dr. Isthos's opinion, specifically noting her opined limitation in overhead activity. Tr. 25.  The ALJ stated the limitation was "more as a result of [Plaintiff's] reported complaints rather than [the doctor's] actual examination."  Tr. 26.  The ALJ found Dr. Isthos's opinion "somewhat persuasive."  Tr. 26.  Therefore, contrary to Plaintiff's assertion, the ALJ discussed the doctor's opinion, including limitations in overhead activity.

Further, the ALJ's discussion and analysis elsewhere in his decision supports his determination that Plaintiff's shoulder impairment did not warrant additional functional limitations in the RFC.  *See Salmini v. Comm'r Soc. Sec.,* 371 F. App'x. 109 (2d Cir. 2010) (remand for clarification not required where ALJ's reasoning can be gleaned from the decision) (internal citations omitted).  In his step-two analysis, the ALJ relied on objective treatment notations showing Plaintiff had normal range of motion in her shoulder and received limited treatment.  Tr. 18.  Indeed, records from the relevant time period, contain two notations of complaints of shoulder pain. In September 2017, Plaintiff sought emergency room treatment after a motor vehicle accident.  Tr. 613.  Injury locations were listed as "head/neck, shoulder/arm and torso."  *Id.*  Plaintiff's "right elbow" was listed under the specific heading of

17

"shoulder/arm injury location." *Id.* A physical examination at that time showed head turn and shoulder shrug were intact, and her upper extremity strength was 5/5. Tr. 632. In January 2018, Plaintiff sought follow-up treatment for insomnia, concussion, and mental impairments. Tr. 345. Plaintiff was instructed to resume medication to help with "sleep, headaches, anxiety, and possibly with other sources of pain such as [her] shoulder." Tr. 351. The record contains no other treatment, complaints, or limitations regarding Plaintiff's shoulder.

Plaintiff cites evidence in the record that she asserts the ALJ failed to address. Dkt. No. 8 at 24. Plaintiff argues that a physical therapy notation from 2013, four years prior to her alleged onset date, noting "back, knee, [and] shoulder pain" supports a reaching limitation. *Id.* at 24, citing Tr. 455. Although it is within an ALJ's purview to consider pre-onset date evidence, it is not required. *James N. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1324, 2020 WL 1140498, at *5 (N.D.N.Y. Mar. 6, 2020) (collecting cases).

Plaintiff also cites the treatment notation from January 2018, as outlined above, instructing Plaintiff to resume medication to help with "sleep, headaches, anxiety, and possibly with other sources of pain such as [her] shoulder." Tr. 347. Plaintiff cites another treatment notation, from 2018, in which Plaintiff presented to her treating provider with various complaints, including "chronic shoulder and back pain." Tr. 809. Despite a complaint of back and shoulder pain, the provider offered no diagnosis, treatment, or referrals. Tr. 809-813. Although the record contains some evidence of complaints of shoulder pain, Plaintiff fails to show that,

based on these records, no reasonable factfinder could have reached the ALJ's decision that Plaintiff's shoulder impairment did not cause additional functional limitations in the RFC.

Plaintiff's related argument, that the ALJ's failure to include additional reaching limitations in the RFC would be harmful because the jobs identified by the ALJ require frequent or constant reaching, also fails.  Dkt. No. 8 at 23-24. Substantial evidence supported the ALJ's assessment of Plaintiff's shoulder impairments and related limitations; therefore, the RFC did not conflict with the jobs identified. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) ("Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment.").

The Court cannot set aside the Commissioner's disability determination unless the decision is based either on legal error or on factual findings that are unsupported by substantial evidence.  The "substantial evidence" standard "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154.  "[I]t is . . . a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).  In particular, it requires deference "to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).  The ALJ's

19

determination was proper and supported by substantial evidence.  Remand is not required.

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 9) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 8).  The Clerk of the Court will close this case.


SO ORDERED.


Dated:      June 23, 2023
            Buffalo, New York


JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE